**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:23-cv-1049

TAPESTRY, INC., a Maryland
Corporation; COACH SERVICES, INC, a
Maryland Corporation; and COACH IP
HOLDINGS LLC, a Delaware Limited
Liability Company,


                            Plaintiff,

v.

HANNSTAR TRADING CO., LTD., a
Colorado Corporation; LESLIE
TRADING, INC., a Colorado Corporation;
DIN METEL, INC., a Colorado
Corporation;

                    Defendants.

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

---

Plaintiffs Tapestry, Inc., Coach Services, Inc., and Coach IP Holdings LLC through their undersigned counsel, for their claims against Defendants HannStar Trading Co., LTD, Leslie Trading, Inc., and Din Metel, Inc., respectfully allege as follows:

**NATURE OF THE ACTION**

1.      This is an action for trademark counterfeiting, trademark infringement and unfair competition under the Lanham Trademark Act of 1946, 15 U.S.C. §1051 et seq. (the "Lanham Act"), and for related claims of trademark infringement and unfair competition under the law of the state of Colorado.

**JURISDICTION AND VENUE**

1

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

2.      Jurisdiction over the parties and subject matter of this action is proper in this Court pursuant to 15 U.S.C. §§ 1121, 1331, and 1338(a).  This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a).

1.      This Court has personal jurisdiction over Defendants HannStar Trading Co. Ltd., Leslie Trading, Inc., and Din Metel, Inc. (hereinafter collectively, "Defendants") because Defendants maintain their headquarters and/or reside in and have committed acts of infringement in this district.

2.      Venue is properly founded in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants maintain their headquarters in this judicial district and the events giving rise to the claims in this action occurred within this judicial district.

## THE PARTIES

3.      Plaintiff Tapestry, Inc. ("Tapestry") is a corporation duly organized and existing under the laws of the state of Maryland, with its principal place of business in New York, New York.

4.      Plaintiff Coach Services, Inc. is a corporation duly organized and existing under the laws of the state of Maryland with its principal place of business in Jacksonville, Florida. Coach Services, Inc. is a wholly owned subsidiary of Tapestry, Inc.

5.      Plaintiff Coach IP Holdings LLC is a limited liability company duly organized and existing under the laws of the state of Delaware with its principal place of business in New York, New York. Coach IP Holdings LLC is a wholly owned subsidiary of Tapestry, Inc.

6.      Upon information and belief, Defendant HannStar Trading Co., Ltd. ("HannStar Trading") is a corporation duly organized and existing under the laws of the state of Colorado, with a principal place of business located at 1942

Broadway Street, Suite 314C, Boulder, Colorado 80302.

7.     Upon information and belief, Defendant Leslie Trading, Inc. ("Leslie Trading") is a corporation duly organized and existing under the laws of the state of Colorado, with a principal place of business located at 1942 Broadway Street, Suite 314C, Boulder, Colorado 80302.

8.     Upon information and belief, Defendant Din Metel, Inc. ("Din Metel") is a corporation duly organized and existing under the laws of the state of Colorado, with a principal place of business located at 1942 Broadway Street, Suite 314C, Boulder, Colorado 80302.

9.     Plaintiffs Tapestry, Inc., Coach Services, Inc., and Coach IP Holdings LLC (hereinafter collectively, "Plaintiffs" or "Coach") are unaware of the names and true capacities of Defendants, whether individual, corporate and/or partnership entities, named herein as DOES 1 through 10, inclusive, and therefore sue them by their fictitious names.  Plaintiffs will seek leave to amend this complaint when their true names and capacities are ascertained.  Plaintiffs are informed and believe and based thereon allege that said Defendants and DOES 1 through 10, inclusive, are in some manner responsible for the wrongs alleged herein, and that at all times referenced each was the agent and servant of the other Defendants and was acting within the course and scope of said agency and employment.

10.    Plaintiffs are informed and believe, and based thereon allege, that at all relevant times herein, Defendants and DOES 1 through 10, inclusive, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior.  Plaintiffs further allege that Defendants and DOES 1 through 10, inclusive, have a non-delegable duty to prevent and/or remedy such acts and the behavior described herein, which duty Defendants and DOES 1 through 10, inclusive, failed and/or refused to perform.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A. The World-Famous Coach Brand and Products

11.    Coach was founded in 1941 as a family-run workshop in Manhattan, New York.  Since then, Coach has been engaged in the manufacture, marketing and sale of fine leather and mixed material products, including, but not limited to, handbags, wallets, accessories, eyewear, footwear, clothing, outerwear, jewelry, and watches (collectively, the "Coach Products"). Coach Products are sold throughout the United States, including in Colorado, through Coach retail stores and outlet stores, through various department stores, and via the Internet websites located at www.coach.com and www.coachoutlet.com.

12.    Coach Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative designs. Among the purchasing public, genuine Coach Products are instantly recognizable as such.

13.    Both in the United States and internationally, the Coach brand has come to symbolize high quality, and Coach Products are among the most recognizable handbags and accessories in the world.  Whether made entirely of leather or in combination with printed or other components, genuine Coach Products are greatly coveted as premier fashion accessories of the highest quality.

14.    The unique mix of function, workmanship, fashion, and style that goes into each and every genuine Coach Product, as well as the brand's exclusive cache, results in Coach Products commanding a relatively high price at retail.  The brand's loyal customer base willingly pays more for genuine Coach Products than they would pay for lesser products both because Coach Products are of higher quality and durability than competitors' products and because of the prestige associated with genuine Coach Products.

### B. The Coach Trademarks

15.    Since 1941, high quality leather goods have been sold under the

4

COACH trademark (the "Coach Mark"). Over time, the types of goods sold under the COACH Mark have expanded extensively to include all the Coach Products, and the Coach Products have long been among the most popular luxury lifestyle items. The COACH Mark itself is iconic, symbolizing a unique blend of fashion, craftsmanship, style, and function, whether associated with handbags or other Coach Products.

16.    Coach owns the trademark and trade name COACH for Coach Products, as well as numerous other highly distinctive marks, including, but not limited to, those pictured here:



The "Signature C Mark"          The "COACH Lozenge"          The "Op Art C Mark"

The "Horse and Carriage Logo"          Collectively, the "Story Patch"

17.    Coach incorporates a variety of distinctive marks in the design of its various handbags, wallets, and other Coach Products. Coach Products typically include at least one federally registered trademark. Often several registered trademarks appear on a single Coach Product. These trademarks are also used in connection with the marketing of Coach Products. Coach and its predecessors have achieved annual sales volume of more than four billion dollars on products bearing Coach's trademarks. As such, Coach's trademarks, and the goodwill associated therewith, are among some of its most valuable assets

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

18.     Coach and its predecessors have registered many of its trademarks with the United State Patent and Trademark Office, including, *inter alia*, the following marks attached hereto and incorporated herein as <u>Exhibit A</u>, which are collectively referred to as the "Coach Trademarks."

19.     The registrations for the Coach Trademarks are valid, subsisting, in full force and effect and a majority have become incontestable pursuant to 15 U.S.C. § 1065.  All registrations originally held in the name of Coach's predecessors, Sara Lee Corporation, Saramar Corporation, and Coach Services, Inc. have been assigned in full to Coach IP Holdings LLC.

20.     The Coach Trademarks at issue in this case have been continuously used and have never been abandoned.

21.     The registration of the Coach Trademarks constitutes *prima facie* evidence of their validity and conclusive evidence of Coach's exclusive right to use the Coach Trademarks in connection with the goods identified therein and on other commercial goods.

22.     The registrations of the Coach Trademarks also provide sufficient notice to Defendant of Coach's ownership of and exclusive rights in the Coach Trademarks.

23.     Coach has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Coach Trademarks.  As a result, products bearing the Coach Trademarks are widely recognized as being high quality products and are exclusively associated by consumers, the public, and the trade with the Coach brand owned by Coach.  The Coach Trademarks have therefore acquired strong secondary meaning and signal to consumers that Coach is the exclusive source of Coach Products bearing the Coach Trademarks.

24.     The Coach Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

### C. Defendants' Acts of Infringement and Unfair Competition

25.    The present lawsuit arises from Defendants' design, manufacture, distribution, advertisement, marketing, offering for sale, and sale of products which infringe upon Plaintiff's rights to the Coach Trademarks (hereinafter referred to as the "Accused Products").

### i. Defendant Din Metel

26.    On or around March 7, 2022, U.S. Customs and Border Protection ("CBP") seized more than 50 goods bearing logos, source identifying indicia, and design elements that are studied imitations of one or more of the Coach Trademarks, including the Horse and Carriage Logo and Signature C Mark. The Accused Products seized by CBP were imported by Din Metel. Exemplars of the Accused Products seized by CBP are shown below:



27.    On or around March 16, 2022, CBP seized more than 180 additional goods bearing logos, source identifying indicia, and design elements that are studied imitations of one or more of the Coach Trademarks, including the Horse and Carriage Logo and Signature C Mark. The Accused Products seized by CBP were imported by Din Metel. Exemplars of the Accused Products seized by U.S CBP are shown below:

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

28.



29.    Coach was subsequently notified of CPB's seizure of the Accused

Products from Defendant Din Metel.

### i.  Defendant Leslie Trading, Inc.

30.    On or around March 21, 2022, CBP seized goods bearing marks

bearing logos, source identifying indicia, and design elements that are studied

imitations of one or more of the Coach Trademarks, including the Horse and

Carriage Logo and Signature C Mark. The Accused Products seized by CBP were

imported by Leslie Trading. Exemplars of the Accused Products seized by CBP are

shown below:



31.    Coach was subsequently notified of CBP's seizure of the Accused Products from Defendant Leslie Trading.

### i.  Defendant HannStar Trading, Co. Ltd.

32.    On or around May 1, 2022, CBP seized 220 goods bearing  logos, source identifying indicia, and design elements that are studied imitations of one or more of the Coach Trademarks including the COACH Lozenge, the Horse and Carriage Logo, and Signature C Mark. The Accused Products seized by CBP were imported by HannStar Trading. Exemplars of the Accused Products seized by CBP are shown below:



33.     Coach was subsequently notified of UCBP's seizure of the Accused Products from Defendant HannStar Trading.

34.     Upon information and belief Defendants' specific conduct includes, among other things, the offering for sale and sale of handbags, backpacks, wallets, and other goods bearing marks and designs that are substantially indistinguishable from and/or confusingly similar to one or more of the Coach Trademarks including the COACH Lozenge, the Horse and Carriage Logo, and Signature C Mark.

35.     Defendants have no license, authority, or other permission from Plaintiffs to use any of the Coach Trademarks in connection with the designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale of the Accused Products.

36.     Defendants have been engaging in the above-described illegal and infringing activities negligently and/or knowingly and intentionally, with reckless disregard or willful blindness to Plaintiffs' rights, and/or with bad faith, for the purpose of trading on the goodwill and reputation of the Coach Trademarks including the COACH Lozenge, Horse and Carriage Logo, Signature C Mark, and Plaintiffs' products.

37.     Defendants' activities, as described above, are likely to create a false
impression and deceive consumers, the public, and the trade into believing that
there is a connection or association between the Defendants, the Accused Products,
and Coach.

38.     Upon information and belief, Defendants intend to continue to design,
manufacture, advertise, promote, import, distribute, sell, and/or offer for sale the
Accused Products.

39.     As a result of Defendants' activities Plaintiffs have suffered
substantial damages and have suffered and continue to suffer irreparable injury
without an adequate remedy at law.

## COUNT I

### Trademark Infringement and Counterfeiting– 15 U.S.C. § 1114
### Against All Defendants

40.     Plaintiffs repeat and reallege the allegations of the preceding
paragraphs as though fully set forth herein.

41.     Defendants without authorization from Coach, have used and continue
to use in commerce counterfeit imitations of the federally registered Coach
Trademarks in connection with the sale, offering for sale, distribution, and/or
advertising of infringing goods; and/or spurious designations that are confusingly
similar to the Coach Trademarks including the COACH Lozenge, Horse and
Carriage Logo, and Signature C Mark.

42.     The foregoing acts of Defendants are intended to cause, have caused,
and are likely to continue to cause confusion, mistake, and deception among
consumers, the public, and the trade as to whether Defendants' Accused Products
originate from, or are affiliated with, sponsored by, or endorsed by Coach.

43.     Upon information and belief, Defendants have acted with knowledge
of Plaintiffs' ownership of the Coach Trademarks including the COACH Lozenge,

Horse and Carriage Logo, and Signature C Mark, and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

44.    Defendants' acts constitute trademark infringement and counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

45.    Upon information and belief, Defendants have made and will continue to make substantial profits and/or gains to which it is not in law or equity entitled.

46.    Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

47.    Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

48.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the Coach Trademarks or any other marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## <u>COUNT II</u>

**False Designation of Origin and False Advertising – 15 U.S.C. § 1125(a)**
**Against All Defendants**

49.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully set forth herein.

50.    Defendants' promotion, advertising, distribution, sale, and/or offering for sale of the Accused Products is likely to confuse, mislead, or deceive

consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Accused Products, and is intended and likely to cause such parties to believe, in error, that the Accused Products have been authorized, sponsored, approved, endorsed or licensed by Plaintiffs, or that Defendants are in some way affiliated with Coach.

51.    The foregoing acts of Defendants constitute a false designation of origin, and false and misleading descriptions and representations of fact, all in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

52.    Upon information and belief, Defendants have made and will continue to make substantial profits and/or gains to which it is not in law or equity entitled.

53.    Upon information and belief, Defendants intend to continue its infringing acts, unless restrained by this Court.

54.    Defendants' acts have damaged and will continue to damage Coach, and Coach has no adequate remedy at law.

55.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using any of the Coach Trademarks and/or any marks identical and/or confusingly similar thereto, and to recover from Defendants all damages, including attorney's fees, that Plaintiffs have sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a).

## COUNT III

### Colorado Unfair Competition and Deceptive Trade Practices –
### Colorado Rev. Stat. § 6-1-105(1)(A)-(C)
### Against All Defendants

56.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully set forth herein.

57.    By the acts, omissions, and offerings set forth above, Defendants are violating Colorado Code §§ 6-1-105(1)(a), (b), and (c).

58.    Plaintiffs own all rights, title, and interest in and to the Coach Trademarks, including COACH Lozenge, Horse and Carriage Logo, and Signature C Mark, including all common law rights in said marks.

59.    Defendants, without authorization from Plaintiffs, used and continue to use spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to the Coach Trademarks, including COACH Lozenge, Horse and Carriage Logo, and Signature C Mark.

60.    Defendants, in the course of using and continuing to use designations that are identical to the Coach Trademarks without Plaintiffs' authorization have knowingly or recklessly, and in bad faith, passed off goods as those of Plaintiffs', have knowingly or recklessly, and in bad faith, made false representations as to the source and sponsorship of their goods as it relates to Plaintiffs, and have knowingly or recklessly, and in bad faith, made false representations as to the affiliation, connection, or association of their goods and services with Plaintiffs.

61.    Defendants' acts constitute unlawful, unfair, and deceptive trade practices and infringement of Plaintiffs' Coach Trademarks under Colorado law.

62.    Defendants' infringing conduct is deceptive to consumers and has injured Plaintiffs in its business and property in the State of Colorado.

63.    As a result of Defendants' infringing conduct and unlawful acts, Plaintiffs have been damaged.

## COUNT IV

### Colorado Common Law Unfair Competition

### Against All Defendants

64.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as though fully set forth herein.

65.    Defendants' willful acts of infringement of Plaintiffs' Coach Trademarks constitute unfair competition in violation of Colorado common law.

66.    Defendants are willfully using the Coach Trademarks in commerce to offer their goods and services without Plaintiffs' authorization.

67.    Defendants' acts have caused and are likely to cause confusion, deception, and mislead consumers as to the source of Defendants' goods.

68.    As a result of Defendants' infringing conduct and unlawful acts, Plaintiffs have been damaged.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Tapestry, Inc., Coach Services, Inc., and Coach IP Holdings LLC respectfully request that this Court enter judgment in their favor and against Defendants HannStar Trading Co. Ltd, Leslie Trading, Inc. and Din Metel, Inc. as follows:

1.    Finding that:

a.    Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and

b.    Defendants have engaged in trademark infringement and unfair competition under the law of the state of Colorado; and

2.    An order granting temporary, preliminary, and permanent injunctive relief restraining and enjoining Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them from using the Coach Trademarks, including, but not limited to:

a.    Manufacturing, designing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products that bear the Coach Trademarks or any other marks substantially indistinguishable from or confusingly similar thereto, including, without limitation, the Accused Products, and engaging in any other activity constituting an infringement of any of Coach's

rights in the Coach Trademarks; or

   b. Engaging in any other activity constituting unfair competition with Plaintiffs, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations or designs associated with the Coach® brand;

  3. Ordering Defendants to recall from any distributors and retailers and to deliver to Plaintiffs for destruction or other disposition all remaining inventory of all Accused Products and related items, including all advertisements, promotional and marketing materials therefore, as well as means of making same;

  4. Ordering Defendants to file with this Court and serve on Plaintiffs within thirty (30) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

  5. Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any product at issue in this action that has been manufactured, designed, imported, advertised, marketed, promoted, supplied, distributed, offered for sale, or sold by Defendants, has been authorized by Plaintiffs, or is related in any way related to, connected to, or affiliated with the Coach® brand;

  6. Ordering an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

  7. Awarding Plaintiffs all of Defendants' profits and all damages sustained by Plaintiffs as a result of Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

  8. Awarding Plaintiffs actual and punitive damages to which they are entitled under applicable federal and state laws;

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

9.      Awarding treble damages in the amount of Defendants' profits or Plaintiffs' damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

10.      Awarding Plaintiffs statutory damages pursuant to 15 U.S.C. § 1117(c);

11.      Awarding applicable interest, costs, disbursements and attorneys' fees; and

12.      Awarding Plaintiffs such additional and further relief as the Court deems just and proper

Dated:    April 25, 2023           Respectfully Submitted,
          Manhattan Beach, CA

                                   By:    /s/ Brent H. Blakely
                                          _____
                                          Brent H. Blakely
                                          Blakely Law Group
                                          1334 Parkview Avenue, Suite 280
                                          Manhattan Beach, CA 90266
                                          Telephone: (310) 546-7400
                                          **Attorney for Plaintiffs**

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs
Tapestry, Inc., Coach Services, Inc., and Coach IP Holdings LLC. hereby demands
a trial by jury of all claims in this litigation.


Dated:    April 25, 2023                    Respectfully Submitted,
          Manhattan Beach, CA


                                    By:    /s/ Brent H. Blakely
                                           Brent H. Blakely
                                           Blakely Law Group
                                           1334 Parkview Avenue, Suite 280
                                           Manhattan Beach, CA 90266
                                           Telephone: (310) 546-7400
                                           **Attorney for Plaintiffs**

## EXHIBIT A

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 2,088,706 | COACH | 6, 9, 16, 18, 20 and 25 for *inter alia* key fobs, eyeglass cases, cellular phone cases, satchels, tags for luggage, luggage, backpacks, picture frames, hats, gloves and caps. | August 19, 1997 | COACH |
| 3,157,972 | COACH | 35 for retail store services. | October 17, 2006 | COACH |
| 0,751,493 | COACH | 14 for leather goods, namely, utility kits, portfolios, key cases, comb cases, pass cases, money clips, billfolds, wallets, pocket secretaries, stud cases, jewel cases, and leather book covers. | June 25, 1963 | COACH |
| 2,451,168 | COACH | 9 for eyeglasses. | May 15, 2001 | COACH |
| 4,105,689 | COACH | 9 for sunglasses. | February 28, 2012 | COACH |
| 2,537,004 | COACH | 24 for *inter alia* home furnishings. | February 5, 2002 | COACH |
| 1,846,801 | COACH | 25 for *inter alia* men's and women's coats and jackets. | July 26, 1994 | COACH |
| 3,439,871 | COACH | 18 for *inter alia* umbrellas. | June 3, 2008 | COACH |
| 2,231,001 | COACH | 25 for *inter alia* clothing for men, women and children namely, coats, jackets, overcoats, raincoats, shirts, vests, scarves, shoes and belts. | March 9, 1999 | COACH |
| 3,354,448 | COACH | 14 for *inter alia* jewelry. | December 11, 2007 | COACH |
| 2,446,607 | COACH | 16 for *inter alia* writing instruments. | April 24, 2001 | COACH |

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 2,291,341 | COACH | 14 for *inter alia* clocks and watches. | November 9, 1999 | COACH |
| 1,071,000 | COACH | 18, 25 for *inter alia* women's handbags, carry-on luggage, and men's and women's belts. | August 9, 1977 | COACH |
| 3,633,302 | COACH | 3 for *inter alia* perfumes, lotions and body sprays. | June 2, 2009 | COACH |
| 2,534,429 | COACH & LOZENGE DESIGN | 9 for *inter alia* eyeglasses, eyeglass frames and sunglasses. | January 29, 2002 | COACH |
| 2,252,847 | COACH & LOZENGE DESIGN | 35 for retail services. | June 15, 1999 | COACH |
| 2,291,368 | COACH & LOZENGE DESIGN | 14 for *inter alia* watches. | November 9, 1999 | COACH |
| 2,534,429 | COACH & LOZENGE DESIGN | 9 for *inter alia* eyeglasses, eyeglass frames and sunglasses. | January 29, 2002 | COACH |
| 2,169,808 | COACH & LOZENGE DESIGN | 25 for *inter alia* clothing for men and women, namely, coats, jackets, scarves, shoes, and belts. | June 30, 1998 | COACH |
| 2,035,056 | COACH & LOZENGE DESIGN | 3, 21 for *inter alia* leather cleaning products and shoe brushes. | February 4, 1997 | COACH |
| 2,626,565 | CC & DESIGN (Signature C) | 18 for *inter alia* handbags, purses, clutches, shoulder bags, tote bags, and wallets. | September 24, 2002 | |
| 2,822,318 | CC & DESIGN (Signature C) | 24 for *inter alia* fabric for use in the manufacture of clothing, shoes, handbags, and luggage. | March 16, 2004 | |

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 2,832,589 | CC & DESIGN (Signature C) | 6, 9, 14, 18, for *inter alia* sunglasses and eye glass cases, leather goods, metal key fobs, leather key fobs jewelry, watches, umbrellas. | April 13, 2004 |  |
| 2,592,963 | CC & DESIGN (Signature C) | 25 for *inter alia* clothing namely, scarves, belts, gloves, hats, shoes, coats, jackets. | July 9, 2002 |  |
| 2,822,629 | CC & DESIGN (Signature C) | 35 for retail services. | March 16, 2004 |  |
| 3,396,554 | AMENDED CC & DESIGN (Signature C) | 3 for *inter alia* fragrances. | March 11, 2008 |  |
| 3,149,330 | C & LOZENGE LOGO | 14 for watches. | September 26, 2006 |  |
| 2,162,303 | COACH & TAG DESIGN | 25 for belts. | June 2, 1998 |  |
| 4,744,715 | COACH NEW YORK & DESIGN | 18 for *inter alia* handbags, small leather goods, luggage, umbrellas | May 26, 2015 |  |
| 4,744,718 | COACH NEW YORK & DESIGN | 25 for *inter alia* clothing, coats, belts, gloves, shoes | May 26, 2015 |  |
| 4,744,719 | COACH NEW YORK & DESIGN | 3 for fragrances, leather cleaners and moisturizers | May 26, 2015 |  |
| 4,744,720 | COACH NEW YORK & DESIGN | 9 for sunglasses, eyewear, cell phone cases, tablet covers and cases | May 26, 2015 |  |
| 4,744,721 | COACH NEW YORK & DESIGN | 14 for jewelry and watches | May 26, 2015 |  |

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 4,744,722 | COACH NEW YORK & DESIGN | 20 for *inter alia* key fobs and key rings not of metal | May 26, 2015 | |
| 4,814,094 | COACH NEW YORK & Design | 18 for handbags; purses; tote bags; clutch purses; wristlet bags; shoulder bags; messenger bags; duffle bags; backpacks; briefcases; travel bags; luggage; garment bags for travel; bags for carrying babies' accessories; cosmetic cases sold empty; and toiletry cases sold empty. | September 15, 2015 | |
| 4,754,870 | COACH NEW YORK | 3, 6 for fragrances; key fobs of common metal; and metal rings and chains for keys. | June 16, 2015 | COACH NEW YORK |
| 5,004,497 | COACH 1941 | 18, 25 for *inter alia* handbags, small leather goods, jackets, clothing, coats and shoes. | July 19, 2016 | COACH 1941 |
| 5,045,622 | HANGTAG SHAPE DESIGN | 18 for *inter alia* briefcases, handbags, satchels, tote bags, duffle bags, cosmetic bags, wallets, luggage. | September 20, 2016 | |

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF