IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-01049-NYW-KAS

TAPESTRY, INC.,
COACH SERVICES, INC., and
COACH IP HOLDINGS LLC,

    Plaintiffs,

v.

HANNSTAR TRADING CO., LTD.,
LESLIE TRADING, INC., and
DIN METEL, INC.,

    Defendants.

## ORDER

This matter comes before the Court on Plaintiffs' Motion for Default Judgment Against Defendant Leslie Trading, Inc. ("Leslie Trading Motion"), [Doc. 24], Plaintiffs' Motion for Default Judgment Against Defendant HannStar Trading Co., Ltd. ("HannStar Trading Motion"), [Doc. 27], and Plaintiffs' Motion for Default Judgment Against Defendant Din Metel, Inc. ("Din Metel Motion"), [Doc. 30-1]. The Leslie Trading Motion, HannStar Trading Motion, and Din Metel Motion (together, "Motions for Default Judgment") were filed by Plaintiffs Tapestry, Inc.; Coach Services, Inc.; and Coach IP Holdings LLC (together, "Plaintiffs" or "Coach") on August 29, 2023. The Court finds that oral argument would not materially assist in the disposition of the Motions for Default Judgment. Upon review of the Parties' briefing, the entire docket, and the applicable case law, this Court respectfully **GRANTS in part** and **DENIES in part** the Motions for Default Judgment.

## BACKGROUND

The Court draws the following facts from the Complaint for Damages and Equitable Relief ("Complaint"), [Doc. 1], filed by Plaintiffs, as well as from the undisputed factual materials submitted in connection with the Motions for Default Judgment.

Plaintiffs Coach Services, Inc. and Coach IP Holdings LLC are wholly owned subsidiaries of Plaintiff Tapestry, Inc. [*Id.* at ¶¶ 4–5]. In this litigation, Plaintiffs represent the interests of the luxury fashion house commonly known as Coach, whose trademarks have all been assigned to Plaintiff Coach IP Holdings LLC.[1] *See* [*id.* at ¶ 19]. Since 1941, "Coach has been engaged in the manufacture, marketing and sale of fine leather and mixed material products, including, but not limited to, handbags, wallets, accessories, eyewear, footwear, clothing, outerwear, jewelry, and watches." [*Id.* at ¶ 11]. Coach products are sold throughout the United States and are available both in stores and online. [*Id.*]. The brand's product lines "have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative designs," and genuine Coach products are "instantly recognizable" by the public. [*Id.* at ¶ 12]. Coach's brand "symbolize[s] high quality," and its products are "greatly coveted as premier fashion accessories," so customers are willing to pay higher prices for Coach products than for competitors' goods. [*Id.* at ¶¶ 13–14]. Coach product designs often incorporate several of Plaintiffs' registered trademarks ("Coach Trademarks"). [*Id.* at ¶¶ 15–17]; *see also* [*id.* at 19–22 (table of Coach Trademarks)]. According to Plaintiffs, "Coach's trademarks, and the goodwill associated therewith, are among some of its most valuable assets." [*Id.* at

---

[1] For ease of reference, the Court sometimes refers to all Plaintiffs as holding the trademarks at issue in this litigation.

2

¶ 17].

Claiming that Defendants Leslie Trading, Inc. ("Leslie Trading"); HannStar Trading Co., Ltd. ("HannStar Trading"); and Din Metel, Inc. ("Din Metel") have imported unlicensed and counterfeit wallets and bags branded with the Coach Trademarks, [*id.* at ¶¶ 25, 34–36], Plaintiffs filed this action for trademark infringement and false advertising under the Lanham Act, and for related claims under Colorado state law.  Between March 2022 and May 2022, United States Customs and Border Protection ("CBP") officials seized hundreds of goods imported by Defendants that "b[ore] logos, source identifying indicia, and design elements that [we]re studied imitations of one or more of the Coach Trademarks." [*Id.* at ¶¶ 26–33].  With respect to Leslie Trading, CBP seized seven wallets on or about March 21, 2022.  [*Id.* at ¶ 30; Doc. 26 at ¶ 9].  With respect to HannStar Trading, CBP seized 220 bags on or about May 1, 2022.  [Doc. 1 at ¶ 32; Doc. 29 at ¶ 9]. With respect to Din Metel, CBP seized 52 wallets on or about March 7, 2022, and 175 bags on or about March 16, 2022.  [Doc. 1 at ¶¶ 26–27; Doc. 31 at ¶ 9].  In connection with these imports, Plaintiffs allege that Defendants sell "handbags, backpacks, wallets, and other goods bearing marks and designs that are substantially indistinguishable from and/or confusingly similar to one or more of the Coach Trademarks."  [Doc. 1 at ¶ 34]. Defendants do not have Plaintiffs' permission to use the Coach Trademarks on their products.  [*Id.* at ¶ 35].  By "trading on the goodwill and reputation of the Coach Trademarks," Defendants are likely to deceive consumers, the public, and the trade.  [*Id.* at ¶¶ 36–37].  Moreover, Defendants have acted willfully.  *See* [*id.*].

Plaintiffs filed this action on April 25, 2023, bringing claims against Defendants for (1) trademark infringement and counterfeiting under 15 U.S.C. § 1114 ("Count I");

3

(2) false designation of origin and false advertising under 15 U.S.C. § 1125(a) ("Count II"); (3) unfair competition and deceptive trade practices under Colo. Rev. Stat. § 6-1-105(1)(A)–(C) ("Count III"); and (4) unfair competition under Colorado common law ("Count IV"). [*Id.* at 11–15]. Plaintiffs seek damages, permanent injunctive relief, attorney's fees, and costs. See [*id.* at 15–16]. Plaintiffs served all Defendants on May 22, 2023, and the Clerk of Court entered default, on motion, when Defendants did not timely enter their appearances. [Doc. 11; Doc. 12; Doc. 13; Doc. 21]. The Honorable Kathryn A. Starnella subsequently ordered Plaintiffs to seek default judgment, [Doc. 23], and these Motions for Default Judgment followed.

## LEGAL STANDARD

Pursuant to Rule 55, a party may apply to the Court for a default judgment after a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(a), (b)(2). A court may conduct hearings to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Even still, there is no right to a default judgment, and "the entry of a default judgment is committed to the sound discretion of the district court." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016).

Determining whether to enter default judgment requires the Court to first resolve whether it has jurisdiction, and if it does, whether the well-pleaded factual allegations in the Complaint and any attendant affidavits or exhibits support judgment on the claims against the defendants. *See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010); *see also Magic Carpet Ski Lifts, Inc. v. S&A Co., Ltd.*, No. 14-cv-02133-REB-KLM, 2015 WL 4237950, at *5 (D. Colo. June 8, 2015) ("There must be a sufficient basis in the pleadings

4

for the judgment entered." (quotation omitted)).  If the Court lacks jurisdiction—either subject matter over the action or personal over the defendant—default judgment cannot enter.  *See Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) ("A default judgment in a civil case is void if there is no personal jurisdiction over the defendant."); *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." (emphasis and quotation omitted)).

By their default, Defendants admit Plaintiffs' well-pleaded allegations of fact, are precluded from challenging those facts by the judgment, and are barred from contesting on appeal the facts established.  *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1093 (D. Colo. 2014); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  The facts alleged in the Complaint which are deemed admitted upon default may form the basis for the Court's entry of a default judgment.  *See, e.g.*, *Salba Corp., N.A. v. X Factor Holdings, LLC*, No. 12-cv-01306-REB-KLM, 2015 WL 5676690, at *2 (D. Colo. Sept. 28, 2015).  A court may also consider undisputed facts set forth in affidavits and exhibits.  *Guarneros v. Denver Green Party*, No. 19-cv-00139-RM-NYW, 2020 WL 7055493, at *2 (D. Colo. Dec. 2, 2020).

But a party in default does not admit conclusions of law, only allegations of fact, and so those allegations must be enough to establish substantive liability.  *Bixler*, 596 F.3d at 762; *Big O Tires, LLC v. C&S Tires, Inc.*, No. 16-cv-00725-MSK-NYW, 2017 WL

5

2263079, at *3 (D. Colo. May 24, 2017) (citing 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)).  In addition, the entry of default does not establish the amount of damages that is reasonable.  Damages may be awarded only if record evidence adequately reflects the basis for the award.  *Klapprott v. United States*, 335 U.S. 601, 611–12 (1949); *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274–75 (D. Kan. 2016).

## ANALYSIS

The Motions for Default Judgment all involve the same issues and exceedingly similar facts.  *See generally* [Doc. 24; Doc. 27; Doc. 30-1].  The Court begins with the Leslie Trading Motion, which Plaintiffs filed first, and then incorporates much of that analysis into the resolution of the HannStar Trading Motion and Din Metel Motion.

**I.     Leslie Trading Motion**

**A.     Jurisdiction**

Starting with subject matter jurisdiction, Plaintiffs argue that the Court may exercise federal question jurisdiction over their Lanham Act claims against Leslie Trading and supplemental jurisdiction over their related state law claims.  *See* [Doc. 24 at 8].  Plaintiffs are correct.  *See* [Doc. 1 at 11–15 (asserting claims under the Lanham Act, a federal statute, as well as related state law claims)]; *see also* 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).  Personal jurisdiction is also straightforward in this dispute, as Plaintiffs allege—and the Court takes as fact—that Defendant Leslie Trading is both incorporated in, and has its principal place of business in, Colorado.  *See* [Doc. 1 at ¶ 7; Doc. 24 at 8]; *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (discussing exercise of general personal jurisdiction over corporations).  Accordingly, it appears that the Court has general personal jurisdiction over Leslie Trading and subject matter jurisdiction over

all claims against it.  The Court also notes that the Leslie Trading Motion is procedurally proper because it follows the Clerk of Court's entry of default against Leslie Trading. [Doc. 21].

### B.      Liability

***Count I.***  Plaintiffs' first claim is for trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.  *See* [Doc. 1 at 11–12].  The Tenth Circuit has explained that "[t]he elements of an infringement claim under the Lanham Act are (1) that the plaintiff has a protectable interest in the mark, (2) that the defendant has used an identical or similar mark in commerce, and (3) that the defendant's use is likely to confuse consumers."  *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013).

Default judgment is warranted on Count I.  First, the Coach Trademarks at issue include the "Signature C Mark," *see* [Doc. 1 at 5], which is subject to several trademark registrations, including in the context of wallets [*id.* at 20–21].  The registered Coach Trademarks are presumptively valid and give Plaintiffs protectable interests in the underlying intellectual property.  *See Educ. Dev. Corp. v. Econ. Co.*, 562 F.2d 26, 28 (10th Cir. 1977); *see also* [Doc. 1 at ¶¶ 18–19].  Next, Leslie Trading imported seven wallets bearing what appear to be Plaintiffs' "Signature C Mark."  *See* [Doc. 1 at 5, 9]; *see also Oakley, Inc. v. Ly*, No. 20-cv-01414-WJM-MEH, 2021 WL 3206320, at *2 (D. Colo. July 29, 2021) (finding that "marks appear virtually identical" upon "[c]omparing images of [the] registered trademarks to the allegedly infringing products").  Finally, these unlicensed wallets are inherently likely to cause consumer confusion because they resemble, but are not, Coach products. *See Otter Prods., LLC v. Wang*, No. 18-cv-03198-

CMA-SKC, 2019 WL 1403022, at *5 (D. Colo. Mar. 28, 2019) (finding likelihood of consumer confusion where infringing products appeared "genuine"). Moreover, by its default, Leslie Trading admits Plaintiffs' thorough allegations of consumer confusion. *See, e.g.*, [Doc. 1 at ¶ 42 ("The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' [a]ccused [p]roducts originate from, or are affiliated with, sponsored by, or endorsed by Coach.")]. Accordingly, the Court finds that Leslie Trading has infringed the Coach Trademarks in connection with the imported shipment of wallets seized by CBP in March 2022.

Relatedly, Plaintiffs suggest that, "[t]o recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116." [Doc. 24 at 9]; *see also Oakley, Inc.*, 2021 WL 3206320, at *2 (same). To whatever extent the counterfeiting aspect of Count I requires alternative or additional analysis, the Court has already found that Leslie Trading infringed the Coach Trademarks, thus satisfying its first prong. That leaves only the willfulness prong. By failing to respond, Leslie Trading has admitted the willfulness of its infringing conduct. *See, e.g.*, [Doc. 1 at ¶¶ 36, 43]. The Court finds that Leslie Trading is liable under Section 32 of the Lanham Act.

**Count II.** The Complaint's second cause of action is for false designation of origin and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *See* [*id.* at 12–13]. That provision renders liable any person who

> uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading

8

> description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1). To prevail on a claim for false advertising, "a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of an identical or similar mark is likely to cause confusion among consumers." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004) (quotation and alteration omitted).

For the reasons discussed above with respect to infringement, Plaintiffs have plainly demonstrated that "Defendant's unauthorized use of the Coach Trademarks on infringing merchandise in interstate commerce and advertising . . . constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiffs or come from Plaintiffs when in fact they do not." [Doc. 24 at 11]; *see also Digital Ally, Inc. v. Utility Assocs., Inc.*, 882 F.3d 974, 978 (10th Cir. 2018) (likelihood of confusion analysis under 15 U.S.C. § 1125(a) focuses on consumer misperception of "origin, association or approval of the [defendant's] product with or by another" (quotation omitted)); *Otter Prods., LLC*, 2019 WL 1403022, at *5. Put simply, Plaintiffs have shown that Leslie Trading imported knockoff Coach merchandise to profit off Coach's brand recognition. Because Leslie Trading's use of the Coach Trademarks has caused consumer confusion with respect to the infringing products' origin and affiliation, as discussed above, the Court finds Leslie Trading liable on Count II such that entry of default judgment is proper.

**Counts III and IV.** The Complaint brings additional state law claims against Leslie Trading for deceptive trade practices under Colo. Rev. Stat. § 6-1-105 and common law unfair competition. *See* [Doc. 1 at 13–15]. But Plaintiffs do not appear to seek entry of

default judgment with respect to these causes of action in the Leslie Trading Motion. To be sure, the Leslie Trading Motion references this Court's ability to exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a), and it generally asserts that Plaintiffs "have pled all the essential facts and elements as to each of the causes of action against [Leslie Trading]." *See* [Doc. 24 at 8–9]. Other than that, however, the Leslie Trading Motion does not address Counts III and IV, discuss their elements, attempt to apply those elements to the facts of this case, or explain how Plaintiffs are entitled to damages under these claims if they recover damages under the federal claims. Based on this omission, and notwithstanding any similarities Counts III and IV share with Plaintiffs' Lanham Act claims, it is unclear to the Court whether Plaintiffs intend to seek default judgment on Counts III and IV. Accordingly, Plaintiffs are **ORDERED** to **SHOW CAUSE** why Counts III and IV should not be dismissed without prejudice for failure to prosecute.

### C.  Relief

The Lanham Act permits successful litigants to pursue a wide variety of remedies. In the Leslie Trading Motion, Plaintiffs seek statutory damages of $200,000.00, permanent injunctive relief, attorney's fees, and costs. The Court considers each in turn.

***Statutory Damages.***  A Lanham Act plaintiff may pursue several different measures of damages, including actual damages, a defendant's profits, and statutory damages. *See* 15 U.S.C. § 1117. Here, Plaintiffs suggest that, due to Leslie Trading's default, they "cannot precisely establish the extent of Defendant's counterfeiting activities," and "[t]he full scope of Defendant's wrongful conduct is thus unknown and will

likely never be known." [Doc. 24 at 13]. In lieu of actual damages, then, Plaintiffs seek statutory damages in the amount of $200,000.00. *See* [Doc. 24 at 13, 16–17].

> The Lanham Act provides that:
>
> (c) In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> > (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> >
> > (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). Section 1116(d) in turn defines a "counterfeit mark" as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use." *Id.* § 1116(d). And a "counterfeit" is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." *Id.* § 1127. For the reasons discussed above with respect to Leslie Trading's liability, the Court finds that Plaintiffs properly elect to receive an award of statutory damages. *See, e.g.*, *Salba Corp., N.A.*, 2015 WL 5676690, at *2.

Plaintiffs acknowledge that the Lanham Act "does not provide guidelines for courts to determine an appropriate award of statutory damages," but they suggest that courts can look to various factors discussed in cases concerning a similar provision in copyright law. [Doc. 24 at 13]. However, Plaintiffs cite no Tenth Circuit authority for this proposition. *See* [*id.*]. The only constraint in the text of the Lanham Act on a statutory damages award

11

is that the award be "just," 15 U.S.C. § 1117(c), and the case in this District cited by Plaintiffs does not involve a court weighing copyright law considerations in the Lanham Act context, *see Salba Corp., N.A.*, 2015 WL 5676690, at *2. For those reasons, the Court will focus on the substance of Plaintiffs' arguments about the propriety of the damages requested and attempt to assess, in its discretion, whether the award sought is just. *Cf. Girlsongs v. 609 Indus., Inc.*, 625 F. Supp. 2d 1127, 1130 (D. Colo. 2008) (noting that district courts have broad discretion to award statutory damages in the context of copyright law).

Plaintiffs stress that it is difficult to determine their actual damages due to Leslie Trading's default, further observing that "the absence of, or failure to maintain, records of infringing activities is quite common amongst trademark infringers," and that this is the "precise reason that Congress amended the Lanham Act to provide for statutory damages." [Doc. 24 at 13]; *see also Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No. 03-cv-05311, 2007 WL 2580491, at *2 (N.D. Ill. Sept. 10, 2007). Comparing the wallets seized by CBP to Coach's product pricing, Plaintiffs estimate their total lost revenue as somewhere between $1,365.00 and $1,575.00. *See* [Doc. 24 at 14]. However, Plaintiffs contend that the "substantial time, money, and other resources" invested in the Coach Trademarks, the recognition they receive, and their importance to the Coach brand all support heightened damages against infringers. [*Id.*]. Plaintiffs also argue that a "substantial" award of statutory damages will serve an essential deterrent function. [*Id.* at 14–15]. Based on Leslie Trading admitting the willfulness of its infringement by defaulting, Plaintiffs further note that several million dollars in statutory damages could technically be awarded. [*Id.* at 15–16]. However, Plaintiffs take the

position that a $200,000.00 default judgment "should be enough to deter [Leslie Trading] and others from continuing to counterfeit or otherwise infringe Plaintiffs' intellectual property and compensate Plaintiffs." [*Id.* at 17]. Plaintiffs base that figure on the single product class (wallets) and single Coach Trademark ("Signature C Mark") involved in Leslie Trading's activity. *See* 15 U.S.C. § 1117(c) (awards of statutory damages are entered "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just").

Upon considering Plaintiffs' arguments, Leslie Trading's conduct, and other damages awards entered in comparable cases, the Court finds that the $200,000.00 statutory damages award sought by Plaintiffs against Leslie Trading falls within the permissible statutory range and is just and proper under these circumstances. *See, e.g.*, *Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1265–66 (S.D. Fla. 2019) (awarding $1,000,000 in statutory damages per infringer where defendants "intentionally copied [luxury brand trademarks] for the purpose of deriving the benefit of [p]laintiff's world-famous reputation," with the court noting that such an award would be "sufficient to deter [d]efendants and others from continuing to counterfeit or otherwise infringe [p]laintiff's trademarks, compensate [p]laintiff, and punish [d]efendants, all stated goals of 15 U.S.C. § 1117(c)"); *see also Salba Corp., N.A.*, 2015 WL 5676690, at *2. Default judgment shall enter against Leslie Trading in the amount of $200,000.00.

***Injunctive Relief.*** The Lanham Act authorizes injunctive relief. *See* 15 U.S.C. § 1116. "To determine whether injunctive relief is appropriate, courts weigh the following factors: (1) actual success on the merits; (2) a likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships favoring Plaintiff[s]; and (4) whether an

injunction will advance the public interest." *Otter Prods., LLC*, 2019 WL 1403022, at *7. Here, Plaintiffs seek a permanent injunction against Leslie Trading's continued infringement of the Coach Trademarks and unfair competition.

The Court finds that injunctive relief is warranted here. With respect to the first factor, Plaintiffs are correct that, as discussed above, "liability for willful trademark counterfeiting has been established by [Leslie Trading's] default." [Doc. 24 at 19]. On the other factors, Plaintiffs' legal authority is persuasive. *See, e.g.*, *Otter Prods., LLC*, 2019 WL 1403022, at *7 (finding irreparable harm in Lanham Act context based on continued infringement); *id.* (finding balance of hardships favoring Lanham Act plaintiffs that "expended substantial time and money developing and protecting" trademarks at issue and would be "unable to protect their trademarks and stop [the] infringing conduct" absent relief); *id.* ("[T]he public interest lies in favor of upholding . . . trademark rights and preventing customer confusion."); *QFA Royalties LLC v. Kanya Enters., Inc.*, No. 10-cv-00958-CMA-KLM, 2011 WL 744926, at *1 (D. Colo. Feb. 24, 2011) ("[I]njury to [plaintiff] in the form of consumer confusion and injury to the franchise name and marks, among other things, would be irreparable, outweighs any threatened injury to [d]efendants, and furthers the public interest."). Considering the weight of authority, the facts admitted by Leslie Trading, and the lack of any arguments against injunctive relief, the Court finds that Plaintiffs have met their burden, and that permanent relief enjoining Leslie Trading from continued infringement and unfair competition is appropriate. *See Chanel, Inc.*, 362 F. Supp. 3d at 1263–64 (granting permanent injunction).

**Fees and Costs.** Plaintiffs seek attorney's fees incurred in litigating against Leslie Trading. *See* [Doc. 24 at 17–18]. Per an itemized table that references the time spent

14

by individual practitioners on particular tasks—supported by a declaration submitted under penalty of perjury—Plaintiffs request $3,545.00 in attorney's fees.  *See* [*id.* at 18]; *see also* [Doc. 26 at ¶ 10].  Reasonable attorney's fees may be awarded under the Lanham Act "in exceptional cases," 15 U.S.C. § 1117(a), a category which encompasses conduct by a defendant that is "malicious, fraudulent, deliberate, or willful," *CrossFit, Inc.*, 69 F. Supp. 3d at 1103 (quoting *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000)).  Default may also militate in favor of awarding fees.  *See id.* at 1104.  As Leslie Trading has defaulted in this proceeding and is deemed to have admitted the allegations that it acted willfully, the Court finds that this qualifies as an "exceptional" case in which fee shifting is warranted.  *See, e.g.*, *RE/MAX, LLC v. Shenzhen Remax Co., Ltd.*, No. 15-cv-02496-REB-SKC, 2020 WL 13042391, at *1 (D. Colo. Mar. 13, 2020) ("With the admission of the [defaulted] defendants that they willfully intended to dilute the [plaintiff's] trademark, this case is an exceptional case.").  However, the Court finds that awarding fees is procedurally improper because Plaintiffs have not complied with this District's Local Rules.  Specifically, Local Rule 54.3 requires that any request for attorney's fees must be supported by affidavit and contain, "for each person for whom fees are claimed," both "a summary of relevant qualifications and experience" and "a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed."  D.C.COLO.LCivR 54.3.  The Leslie Trading Motion and its supporting materials specify only the initials of the attorneys for whom fees are claimed.  *See* [Doc. 24 at 18; Doc. 26 at 3].  The Leslie Trading Motion's request for attorney's fees is respectfully denied based on Local Rule 54.3.  *See Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1246 (D. Colo. 2015) (declining to

15

entertain requests for attorney's fees for two attorneys for whom "a summary of relevant qualifications and experience" was not submitted).

Plaintiffs also seek costs. *See* [Doc. 24 at 18]. The Court awards the requested $247.33 in costs based on representations made by Plaintiffs' counsel in a declaration submitted under penalty of perjury. *See* [Doc. 26 at ¶ 10]; *see also Carmax Auto Superstores W. Coast v. Carmax, LLC*, No. 07-cv-02264-RPM-MJW, 2008 WL 4197741, at *3 (D. Colo. Sept. 9, 2008) (awarding "reasonable attorney fees and costs based on . . . willful conduct in violation of the Lanham Act").

## II.     HannStar Trading Motion

The Hannstar Trading Motion is subject to like disposition. For the reasons discussed above, the Court has personal jurisdiction over HannStar Trading and subject matter jurisdiction over the claims against it. *See* [Doc. 1 at ¶ 6 (alleging that HannStar Trading is incorporated in, and has its principal place of business in, Colorado)]. The Hannstar Trading Motion follows the Clerk of Court's entry of default. [Doc. 21]. With respect to substantive liability, the only difference material to the Court's adjudication of Counts I and II is that CBP seized 220 bags imported by HannStar Trading. [Doc. 29 at ¶ 9]. Based on the Court's review, these bags included, without authorization, the "COACH Lozenge," the "Horse and Carriage Logo," and the "Signature C Mark," all registered Coach Trademarks. *See* [Doc. 1 at 10, 20–22; Doc. 27 at 14–16]. Accordingly, the Court finds that HannStar Trading has infringed and counterfeited the Coach Trademarks, and falsely represented the origin of its goods, in connection with the imported shipment of bags seized by CBP in May 2022, such that default judgment on Counts I and II is warranted. Turning to the appropriate remedy, the Court notes that

Plaintiffs estimate their lost revenue from HannStar Trading's activity as between $64,900.00 and $108,900.00. [Doc. 27 at 14]. Plaintiffs seek a statutory damages award of $200,000.00 per mark, per good type, for a total award of $600,000.00, based on three marks used in one product category, bags. [*Id.* at 17]. For the reasons discussed above with respect to Leslie Trading, the Court will award statutory damages of $600,000.00, enter a permanent injunction, and tax costs in the amount of $472.33. *See* [Doc. 29 at 3]. The Court will not award attorney's fees at this time, and Plaintiffs shall **SHOW CAUSE** why Counts III and IV against HannStar Trading should not be dismissed without prejudice.

### III.    Din Metel Motion

The Court resolves the Din Metel Motion in the same manner as the other Motions for Default Judgment, incorporating the foregoing analysis. For the reasons discussed above, the Court has personal jurisdiction over Din Metel and subject matter jurisdiction over the claims against it. *See* [Doc. 1 at ¶ 8 (alleging that Din Metel is incorporated in, and has its principal place of business in, Colorado)]. The Din Metel Motion follows the Clerk of Court's entry of default. [Doc. 21]. With respect to substantive liability, the only difference material to the Court's adjudication of Counts I and II is that CBP seized 52 wallets and 175 bags imported by Din Metel. [Doc. 31 at ¶ 9]. Based on the Court's review, these wallets and bags included, without authorization, the "Horse and Carriage Logo" and the "Signature C Mark," both registered Coach Trademarks. *See* [Doc. 1 at 7–8, 20–22; Doc. 30-1 at 17–18]. Accordingly, the Court finds that Din Metel has infringed and counterfeited the Coach Trademarks, and falsely represented the origin of its goods, in connection with the imported shipments of wallets and bags seized by CBP in March

2022, such that default judgment on Counts I and II is warranted. Turning to the appropriate remedy, the Court notes that Plaintiffs estimate their lost revenue from Din Metel's conduct as between $61,765.00 and $98,325.00. [Doc. 30-1 at 15]. Plaintiffs seek a statutory damages award of $200,000.00 per mark, per good type, for a total award of $800,000.00, based on two marks used in two product categories, wallets and bags. [*Id.* at 18]. For the reasons discussed above with respect to Leslie Trading, the Court will award statutory damages of $800,000.00, enter a permanent injunction, and tax costs in the amount of $247.33. *See* [Doc. 31 at 3]. The Court will not award attorney's fees at this time, and Plaintiffs shall **SHOW CAUSE** why Counts III and IV against Din Metel should not be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiffs' Motion for Default Judgment Against Defendant Leslie Trading, Inc. [Doc. 24] is **GRANTED in part** and **DENIED in part**;

(2) Default judgment **SHALL ENTER** against Defendant Leslie Trading, Inc. in the amount of **$200,000.00**;

(3) Defendant Leslie Trading, Inc., its officers, agents, servants, employees, and any persons in active concert or participation with them are **PERMANENTLY RESTRAINED AND ENJOINED** from using the Coach Trademarks and from unfairly competing with Plaintiffs;

(4) Costs are hereby **TAXED** against Defendant Leslie Trading, Inc. in the amount of **$247.33**;

(5) Plaintiffs' Motion for Default Judgment Against Defendant HannStar Trading Co., Ltd. [Doc. 27] is **GRANTED in part** and **DENIED in part**;

18

(6) Default judgment **SHALL ENTER** against Defendant HannStar Trading Co., Ltd. in the amount of **$600,000.00**;

(7) Defendant HannStar Trading Co., Ltd., its officers, agents, servants, employees, and any persons in active concert or participation with them are **PERMANENTLY RESTRAINED AND ENJOINED** from using the Coach Trademarks and from unfairly competing with Plaintiffs;

(8) Costs are hereby **TAXED** against Defendant HannStar Trading Co., Ltd. in the amount of **$472.33**;

(9) Plaintiffs' Motion for Default Judgment Against Defendant Din Metel, Inc. [Doc. 30-1] is **GRANTED in part** and **DENIED in part**;

(10) Default judgment **SHALL ENTER** against Defendant Din Metel, Inc. in the amount of **$800,000.00**;

(11) Defendant Din Metel, Inc., its officers, agents, servants, employees, and any persons in active concert or participation with them are **PERMANENTLY RESTRAINED AND ENJOINED** from using the Coach Trademarks and from unfairly competing with Plaintiffs;

(12) Costs are hereby **TAXED** against Defendant Din Metel, Inc. in the amount of **$247.33**;

(13) The acts prohibited by the permanent injunctions entered against Defendants include, but are not limited to,

    a. Manufacturing, advertising, marketing, promoting, supplying, offering for sale, and/or selling products that bear unauthorized reproductions of any Coach Trademarks, or any marks identical,

    substantially similar, and/or confusingly similar to any Coach Trademarks;

  b. Using any Coach Trademarks in any reproduction, counterfeit, copy, or colorable imitation of a Coach product;

  c. Passing off, inducing, or enabling others to sell or pass off any reproduction, counterfeit, copy, or colorable imitation of a Coach product as an authentic Coach product;

  d. Representing that Defendants are licensed, authorized, or sponsored by Plaintiffs with respect to any product bearing one or more unauthorized reproductions of any Coach Trademarks; and

  e. Assisting, aiding, or attempting to help other individuals or entities to infringe any Coach Trademarks or to perform any of the prohibited activities set forth above;

(14) On or before **December 26, 2023**, Plaintiffs shall **SHOW CAUSE** in writing, if any there be, why Claims III and IV should not be dismissed without prejudice for failure to prosecute; and

(15) Plaintiffs may renew their request for attorney's fees, on or before **January 9, 2024**, in compliance with Local Rule 54.3.

DATED: December 12, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge